## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **CAMP'S GROCERY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.:  4:16-cv-00204-JEO** |
| | ) | |
| **STATE FARM FIRE AND** | ) | |
| **CASUALTY COMPANY,** | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**COMES NOW** State Farm Fire and Casualty Company (hereinafter "State Farm"), by and through its counsel of record, and respectfully moves this Court pursuant to Rule 56, FED. R. CIV. P., to grant Summary Judgment in its favor, as there is no genuine issue of material fact and State Farm is entitled to judgment as a matter of law.  This motion is based on the foregoing:

1.   Exhibit A:   Underlying Complaint;

2.   Exhibit B:   State Farm Businessowners Coverage
                   Policy No.:  93 E2 0948 9; and

3.   The accompanying brief in support of this motion.

# I.    INTRODUCTION

Defendant State Farm insures Plaintiff Camp's Grocery (hereinafter "Camp's") under a Businessowners Policy ("BOP") which includes certain endorsements and forms. This action arises out of an underlying lawsuit filed against Camp's in Etowah County, Alabama, stemming from customers affected by a data breach allegedly caused by Camp's. Camp's alleges in the instant action that State Farm has a duty to defend and indemnify it under an Inland Marine Computer Property Form ("IMCPF") and/or the BOP.

As set forth more fully below, the IMCPF is a first-party insuring agreement which is not applicable to the third-party claims alleged in the underlying lawsuit. Further, the IMCPF does not contain a duty to defend provision. Even if the IMCPF was a third-party insuring agreement, and a duty to defend provision existed, the allegations of the Underlying Complaint do not trigger the insuring agreement or the extensions of coverage.

State Farm also does not have a duty to defend or indemnify Camp's under the BOP because the insuring agreement was not triggered and the Electronic Data Exclusion and the Willful and Malicious or Criminal Acts apply to preclude coverage. As a result, summary judgment should be granted in State Farm's favor and the Court should declare that State Farm has no duty to defend or indemnify Camp's in the underlying lawsuit.

## II.  STATEMENT OF UNDISPUTED RELEVANT FACTS

1.     On August 17, 2015, Alabama Teachers Credit Union, Family Savings Credit Union, and Winsouth Credit Union (hereinafter collectively the "underlying plaintiffs") filed suit against Camp's alleging 1) Negligent Misrepresentation, 2) Violation of the Gramm-Leach-Bliley Act, 3) Negligence, 4) Wantonness, 5) Negligence Per Se, and 6) Breach of Contract as a result of a data breach (hereinafter "Underlying Complaint"). (*See* the Complaint [Doc. 1], at Exhibit A, Underlying Complaint) (attached hereto as **Exhibit A**).[1]

2.     The Underlying Complaint alleges that in both known and unknown data security breaches, thousands of credit cards and debit cards were compromised by a third-party due to Camp's acts and omissions. (Underlying Complaint at ¶ 5).

3.     The Underlying Complaint also alleges that Camp's negligently and/or wantonly breached acceptable standards of practice in providing computer systems by failing to maintain adequate encryption, intrusion detection, and prevention procedures.  (Underlying Complaint at ¶7).

4.     It further alleges that Camp's knew or should have known that its alleged actions and omissions would result in harm to the underlying plaintiffs. (Underlying Complaint at ¶¶27-29, 47).

---

[1] Piggly Wiggly, LLC was also a defendant in the underlying suit, but was dismissed from the suit.

5.     The Underlying Complaint requests damages for losses incurred as a result of the theft of electronic data maintained in the magnetic stripe of the underlying plaintiffs' credit cards.  (*See* Underlying Complaint, ¶¶30-34.)

6.     The Underlying Complaint alleges that as a result they were required to "protect their customers and avoid fraud losses, cancel cards they had issued, and reissue cards with new account numbers and magnetic stripe information." (Underlying Complaint at ¶¶36-42).

7.     It alleges economic losses related to reissuing of cards, reimbursement of fraudulent charges, lost interest and transaction fees, administrative expenses, reputation damage and lost customers. (Underlying Complaint at ¶¶36-42).

8.     As a result of these actions, the Underlying Complaint alleges that underlying plaintiffs' and their customer's private and financial information was wrongfully accessed and used by a third-party causing them to incur significant financial losses associated with credit card reissuance, reimbursement for fraud losses, lost customers, and damage to their reputation. (Underlying Complaint at ¶¶8, 36-42).

9.     On October 1, 2014, the date of loss, State Farm insured Camp's Grocery (hereinafter "Camp's") under the terms and conditions of Businessowners policy number 93-E2-0948-9 (CMP-4100) (hereinafter "BOP") along with the Inland Marine Computer Property Form, FE-8743 (hereinafter "IMCPF") and FE-

8739 Inland Marine Conditions (hereinafter "IMC") (hereinafter collectively the "Policy"). (**Exhibit B**, Certified copy of the Policy, the declarations page, and all forms and endorsements[2]).

10.    On February 3, 2016, Camp's filed the instant declaratory judgment action against State Farm. (Doc. 1.)  Specifically, Camp's is requesting a judicial declaration that State Farm must defend and indemnify it in the underlying lawsuit under the terms and conditions of the IMCPF and/or the BOP.  (*Id.*)

## III.    RELEVANT LEGAL AUTHORITIES

### A.    <u>Summary Judgment Standard of Review</u>

Under Federal Rule of Civil Procedure 56, the moving party is entitled to the entry of summary judgment when there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c).  After a motion for summary judgment has been made, the burden shifts to the non-moving party to demonstrate by specific facts and by competent evidence that a genuine issue of material fact exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that

---

[2]  The entire policy is attached as an Exhibit; however, for the Court's ease of reference, an Appendix containing excerpts of the policy language pertinent to this motion is also attached.

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment, and factual disputes that are irrelevant or unnecessary will not be counted. *Anderson*, 477 U.S. at 248. Additionally, "mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989).

**B.** **Legal basis for the duty to defend and indemnify.**

Whether an "insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (*quoting Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001) (*citing U.S. Fid. & Guar. Co. v Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985))). "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.* (quoting *Acceptance*, 832 So. 2d at 14 (citing *Ladner & Co. v. S. Guar. Ins. Co*., 347 So. 2d 100, 102 (Ala. 1977))); *Tanner v. State Farm Fire & Cas. Co*., 874 So. 2d 1058, 1065 (Ala. 2003). Where there is no ambiguity in the terms of an insurance policy, the court must enforce the policy language "as written" and "cannot defeat express provisions in a policy, including exclusions

from coverage, by making a new contract for the parties." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012). Here, there is no coverage for the alleged claims in this case based on the clear, unambiguous language of the Policy. Thus, this motion is due to be granted.

### C. This Court has jurisdiction to determine State Farm's duties to defend and indemnify.

A federal court may exercise jurisdiction over a declaratory judgment action at its discretion. *See Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984). As such this Court has jurisdiction to consider this matter and to determine whether a duty to defend and indemnify exists on the part of State Farm. In fact, this Court, in quoting *Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999), held:

> "any issue decided by this court will have to be based on the claims presently stated in the pending state court action," and that "any such determination would not affect possible issues which later arise." The court, therefore, finds that it has jurisdiction to determine State Farm's duties to defend and indemnify its insureds…in the underlying state lawsuit, based on the current allegations and factual assertions stated in the Amended Complaint.

*State Farm Fire & Cas. Co. v. Lamb et al.*, No. 2:08-cv-2311-SLB (N.D. Ala. Mar. 31, 2010) (Blackburn, J.) (emphasis added). Therefore, it is well within this

Court's discretion to determine if State Farm has a duty to defend <u>and indemnify</u> in this matter under the applicable Policy.[3]

## IV.  LEGAL ARGUMENT

### A.  <u>State Farm Does Not Have a Duty to Defend or Indemnify Camp's Under the IMCPF.</u>

The IMCPF does not provide coverage for claims in the Underlying Complaint because it is a first-party insuring agreement without a duty to defend provision, and there are no claims by property owners.

#### 1.  The IMCPF Is a First Party Insuring Agreement.

Camp's alleges in its Complaint for Declaratory Judgment that it is entitled to a defense and indemnity in the underlying suit under the IMCPF. This allegation is unfounded. The IMCPF is a first-party insuring agreement, which by definition, does not provide indemnification for sums that Camp's becomes legally obligated to pay as a result of third-parties' claims.

Insuring agreements are generally "one of two classes: either 'first-party coverage' or 'third-party coverage.'" *Colony Ins. Co. v. Ga.-Pac., LLC*, 27 So. 3d 1210, 1214 (Ala. 2009) (quoting *Great Northern Ins. Co. v. Mount Vernon Fire*

---

[3] Because the duty to defend is broader than the duty to indemnify, if this Court finds that there is no duty to defend, the Court must necessarily conclude that State Farm does not owe a duty to indemnify. *State Farm v. Eldridge et al.*, No. 4:09-cv-1144-VEH (N.D. Ala. Feb. 12, 2010) (Hopkins, J.) (citing *USF&G Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 572 (Ala. 1982)).

*Ins. Co.*, 708 N.E.2d 167, 170-171 (N.Y. 1999)). The Supreme Court of Alabama

has explained the difference between first-party and third-party coverage:

> ''First-party coverage' pertains to loss or damage sustained by an insured to its property; the insured receives the proceeds when the damage occurs. … In contrast, if the insurer's duty to defend and pay runs to a third-party claimant who is paid according to a judgment or settlement against the insured, then the insurance is classified as 'third-party insurance' …. Thus, wholly different interests are protected by first-party coverage and third-party coverage.
>
> … The interests protected … involve property, not persons. Indeed, the goal of first-party property coverage, including fire, builder's risk and installation risk, is to reimburse the insured for the insured's actual property loss, dollar for dollar, but no more.'

*Colony Ins. Co., LLC*, 27 So. 3d at 1214-15 (quoting *Great Northern Ins. Co.*, 708

N.E.2d at 170-171); *See also Titan Indem. Co. v. Riley*, 679 So. 2d 701, 706 (Ala.

1996) (noting that a "'first-party' insurance contract" is "a policy providing for the

payment of proceeds to the insured."); *See also* 2 Ostrager & Newman, *Insurance

Coverage Disputes* § 21.01[a], at 1303 (13th ed. 2006).

An examination of the IMCPF reveals that it is a first-party insuring

agreement.  It provides: "we will pay for accidental direct physical loss to…1.

Computer equipment…..2. Removable data storage media."  (Ex. B, the Policy, at

IMCPF, at p. 1.)  This insuring agreement language is identical to the first-party

coverage language found in Section I, the first-party insuring agreement, of the

BOP. (*See* Ex. B, the Policy, at BOP, p. 3, Section I, Property  "we will pay for

accidental direct physical loss to…" *compare with* BOP, p. 23, Section II, Liability

"[w]e will pay those sums that the insured becomes legally obligated to pay.").

Likewise, the "Duties in the Event of a Loss" found in Section I of the BOP are almost identical to those found under the IMC's, "Duties in the Event of a Loss." More telling is that Section II of the BOP provides that if a claim or "suit" is brought against an insured, then the insured must send State Farm written notice of the claim or "suit" as soon as practicable and immediately forward every notice, demand, summons or other process relating to the claim or "suit." (*See* Ex. B, the Policy, at BOP, p. 33). This language is noticeably absent from IMCPF and IMC. Accordingly, the IMCPF is a first-party insuring agreement. For that reason alone, State Farm has no duty to indemnify Camp's for third-party claims like the underlying suit and the inquiry into coverage should end.

### 2.     The IMCPF Does Not Contain a Duty To Defend Provision.

Even if the IMCPF was a third-party insuring agreement, which it is not, State Farm still does not have a duty to defend Camp's. Under the conditions of the IMCPF, defense of Camp's is discretionary. The IMC provide that State Farm "….***may elect*** to defend you, at our expense, against suits arising from claims of owners of property." (IMC, at 1(4)(d); *compare with* Ex. B, the Policy at BOP, Section II at 23 "we will have the ***right and duty*** to defend the insured by counsel of our choice against any 'suit' seeking those damages." (emphasis added).)

Courts have determined that similar language to the "we may elect to defend you" clause, does not constitute a duty to defend, rather a right to defend if the insurer so chooses. *See East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. App. 2005), *review denied,* 931 So. 2d 899 (Fla. 2006) ("even when the complaint in the underlying lawsuit alleges facts within the coverage of the policy, if the policy confers on the insurer only a *right* to defend, the insurer is not obligated to defend the insured.") (emphasis in original) (citing *Centennial Ins. Co. v. Transitall Servs., Inc.*, 2001 U.S. Dist. LEXIS 3410 (N.D. Ill. 2001)); *Stadium Lincoln-Mercury, Inc. v. Heritage Transport*, 826 N.E.2d 332, 337 (Ohio App. 2005) (policy language stating "We may elect to defend you against suits arising from claims of owners or property" "unambiguously stated that [insurer] has the right, but not the duty, to defend [insured] from suit"); *Ohio Casualty Ins. Co. v. Carman Cartage Co., Inc.*, 636 N.W.2d 862, 935 (Neb. 2001) (holding that similar language gave Ohio Casualty a *right* to defend claims against its insured, but imposed no *duty* to defend.); *B&D Appraisals v. Gaudette Machinery Movers,* 752 F. Supp. 554, 556 (D.R.I. 1990) (where the policy provided that "this Company reserves the right at its sole option to defend such action," the unambiguous language of the policy gave the insurer only the right to exclusive control over potential litigation, and not the duty to defend); *City of Peoria v. Underwriter's at Lloyd's London, Uninc.*, 290 F. Supp. 890, 892 (S.D. Ill. 1968)

(policy which provided that the insurer "may, 'if they so desire,' 'take over the conduct . . . of the defense of any claim' covered by the policy provisions" created only the right, not the obligation, to assume conduct of the defense). Accordingly, under the plain, unambiguous language of the IMCPF terms, State Farm **does not a have a duty to defend Camp's, but maintains the right** to defend Camp's.

### 3. Electronic Data Is Not Property Under the IMCPF.

Even if the IMCPF was a third-party agreement and defense was not discretionary, State Farm still does not have a duty to defend Camp's under the IMCPF. The IMCPF limits any defense to "suits arising from claims of owners of property." (IMC, at 1(4)(d).) "Property" is not defined by the IMCPF. "Property damage" is, however, defined by the BOP as limited to "tangible property." [4] (*See* Ex. B, the Policy, at BOP, p. 36.) Further, the BOP specifically provides that "electronic data" such as the electronic financial information here, "is not tangible property."[5] As explained below, the allegations of the underlying lawsuit do not arise from a claim of a property owner as "property" is routinely defined by the insurance policy and Alabama case law.

---

[4] "An undefined word or phrase in an insurance policy does not create an inherent ambiguity." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 692 (Ala. 2001). To the contrary, "where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it." *Id.* (citations omitted).

[5] Electronic data means "information….transmitted to or from…. data processing devices or any other repositories of computer software which are used with electronically controlled equipment." (Ex. B, the Policy, at IMCPF, p. 4.)

The Supreme Court of Alabama has held that "tangible property" "is property that is capable of being handled, touched, or physically possessed ...." *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 248 (Ala. 1995). "The language used in each policy is based on the assumption that tangible property, unlike an economic interest, is generally subject to physical damage or destruction." *Id*. at 249.

The Underlying Complaint requests damages for losses incurred as a result of the theft of electronic data maintained in the magnetic stripe of the underlying plaintiffs' credit cards. (*See* Ex. A, Underlying Complaint, ¶¶30-34.) This electronic data is not property because it cannot be touched or physically possessed. Accordingly, the Underlying Complaint is not "a suit arising from claims of owners of property" and State Farm has no duty, discretionary or otherwise, to defend Camp's.

### 4. There is No Direct Physical Loss.

Even if the IMCPF was a third-party insuring agreement that contained a duty to defend provision, and the Underlying Complaint arose from claims of property owners, State Farm still does not have a duty to defend or indemnify Camp's because there is no direct physical loss to covered property.

The IMCPF insuring agreement provides, in relevant part, that it will "pay for accidental direct ***physical loss*** to" 1) computer equipment that is used Camp's

business and 2) "removable data storage media used in [Camp's] business operations to store 'electronic data.'" (Ex. B, the Policy, at IMCPF, p. 1.) (emphasis added.) There are no allegations asserted in the Underlying Complaint that can be considered a claim for direct ***physical loss*** to computer equipment used in Camp's business or data storage media used in Camp's business. As previously discussed, all losses are economic. Further, the IMCPF specifically excludes coverage for "electronic data" under this portion of the insuring agreement. (*Id*.) Accordingly, the allegations of the Underlying Complaint do not meet the terms of the IMCPF insuring agreement and State Farm does not have a duty to defend or indemnify Camp's.

### 5.     The Extensions of Coverage Insuring Agreement is Not Triggered.

The IMCPF contains an Extensions of Coverage provision. It provides that State Farm "will pay for accidental direct loss to…. (2) That portion of your customers' 'electronic data' that is supplied to you for processing or other use in your business operations…." (Ex. B, the Policy, at IMCPF, p. 2.) State Farm does not have a duty to defend or indemnify Camp's under the extensions of coverage.

The Underlying Complaint alleges that the underlying plaintiffs' and their customers' private and financial electronic information was wrongfully accessed and used by a third-party. (*See* Ex. A, Underlying Complaint, at ¶34.) The Underlying Complaint alleges that as a result they were required to "protect their

customers and avoid fraud losses, cancel cards they had issued, and reissue cards with new account numbers and magnetic stripe information." (Ex. A, Underlying Complaint at ¶¶36-42). It alleges economic losses related to reissuing of cards, reimbursement of fraudulent charges, lost interest and transaction fees, administrative expenses, reputation damage and lost customers. (*Id.*).

These are not claims for the actual loss of electronic data (e.g. the replacement value of the electronic data); rather these are claims for damages *caused by* the loss of electronic data. The IMCPF Extensions of Coverage specifically provides that "[l]oss does not include any consequential loss…" Accordingly, even if this were a third-party insuring agreement with a duty to defend provision, then State Farm still does not have a duty to defend or indemnify Camp's under the IMCPF as neither the insuring agreement nor the extensions of coverage insuring agreement are met. As a result, State Farm is entitled to summary judgment.

### B.  State Farm Does Not Have a Duty To Defend or Indemnify Camp's Under the BOP.[6]

There is no coverage for the underlying lawsuit under the BOP, because there was no "occurrence" or "personal and advertising injury." Even if there had been an "occurrence" or a "personal and advertising injury," Camp's is still not

---

[6] Camp's Complaint against State Farm does not specifically allege coverage under the BOP, focusing only on the IMCPF. Out of an abundance of caution, however, State Farm will address coverage under the BOP.

entitled defense and indemnity under the BOP because the Electronic Data Exception, the Willful and Malicious Act Exception and the Criminal Acts Exception, apply to preclude coverage.

### 1. Failure to Prevent a Data Breach is Not an "Occurrence."

The first insuring agreement trigger for coverage under the BOP is simply, a claim for "bodily injury" or "property damage" caused by an "occurrence." Even a cursory review of the Underlying Complaint demonstrates there are no allegations against Camp's for "bodily injury" or "property damage."

### a. There is no "bodily injury."

The BOP's Amendatory Endorsement CMP-4201 defines "bodily injury" as "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom." (Ex. B, the Policy, at CMP-4201, p. 1.) The Underlying Complaint does not make any claim of bodily injury. Moreover, all of the underlying plaintiffs are businesses, which cannot suffer bodily injury. *See e.g., Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 748 (7th Cir. 2008) ("A corporation cannot suffer bodily injury"); *Johnson v. Foundry, Inc.*, 702 N.W.2d 274, 278 (Minn. Ct. App. 2005) ("Corporations do not suffer bodily injury or death. At most, a corporation can have a claim for property damage to property owned by the corporation."). Therefore, "bodily injury" as defined by the BOP has not been alleged.

### b. There is no "property damage."

The BOP defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property." (*See* Ex. B, the Policy, at BOP, p. 36.)

The BOP specifically provides that "electronic data is not tangible property." (*Id.*) Courts routinely uphold such unambiguous provisions. *See, e.g.*, *Liberty Corp. Capital Ltd. v. Sec. Safe Outlet, Inc.*, 937 F. Supp. 2d 891 (E.D. Ky. Mar. 27, 2013) (Kentucky law) ("[T]he terms of the Policy clearly and unequivocally exclude 'electronic data,' including information stored, created or used on computer software, from the definition of 'tangible property.' Information obtained from [the insured]'s customer database falls squarely within this exclusion."); *Union Pump Co. v. Centrifugal Tech., Inc*., No. 05-0287, 2009 U.S. Dist. LEXIS 86352, at *2 (W.D. La. Sept. 18, 2009) (holding that there was no coverage for claims alleging "the unauthorized and wrongful use, and ultimately, the destruction of its design drawings, autocad drawings, and pump models" where the policy definition of "property damage" stated that "electronic data is not tangible property" and "[t]he policy itself specifically excludes electronic data, which would encompass all electronic copies of the design and autocad drawings.").

As previously discussed, the Supreme Court of Alabama defines "tangible property" as "property that is capable of being handled, touched, or physically possessed ... [p]urely economic losses are not included in this definition." *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 248 (Ala. 1995). Purely economic losses, are not property damage. *Id*. at 249 ("The language used in each policy is based on the assumption that tangible property, unlike an economic interest, is generally subject to physical damage or destruction."); *See also Reliance Ins. Co. v. Gary Wyatt*, 540 So. 2d 688 (Ala. 1989) (purely economic loss does not constitute property damage); *Ajdarodini v. State Auto Ins. Co.*, 628 So. 2d 312 (Ala. 1993) (dicta suggests that claim for return of money does not constitute claim for property damage). There are no allegations in the Underlying Complaint that can be considered a claim of physical injury or loss of use to tangible property.

The underlying plaintiffs allege that they were required to "protect their customers and avoid fraud losses, cancel cards they had issued, and reissue cards with new account numbers and magnetic stripe information" after the magnetic stripe information was stolen. (Ex. A, Underlying Complaint at ¶¶36-42). They allege losses related to reissuing of cards, reimbursement of fraudulent charges, lost interest and transaction fees, administrative expenses, and damage to their reputations and lost customers. (Ex. A, Underlying Complaint at ¶¶36-42).

Because electronic data is specifically excluded from tangible property, these damages are strictly economic.

The allegations of the Underlying Complaint do not make any allegation that the customer credit cards were physically damaged or could not make purchases. The cards were being replaced not because they were physically damaged (e.g. cracked) or could not be used; rather they were replaced because the information on them was compromised. Because there is no physical injury or destruction, there is also no loss of use, as the definition limits loss of use to situations where the loss was caused by physical injury. Therefore, the allegations of the Underlying Complaint are "purely economic" in nature and do not fall within the definition of physical damage or loss of use to tangible property. *See e.g., Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 96 (4th Cir. 2003) (damage to software is not physical damage to tangible property) (citing *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 819 (3d Cir. 1994)); *Sony Computer Entm't Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1020 (9th Cir. 2008) (holding that although the defects in the PlayStation 2 device rendered them unable to play certain DVDs and game disk, there was no property damage because the discs at issue were not defective or damaged; rather the disks could not play on a specific device.). Accordingly, there is no "property damage."

Without "bodily injury" or "property damage," there can be no "occurrence" and that portion of the BOP insuring agreement is therefore not triggered.

## 2. There is No Personal and Advertising Injury.

The insuring agreement of the BOP can also be triggered if a "personal and advertising injury" has been caused by an offense. The BOP defines "personal and advertising injury" as:

> injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
> **a.** False arrest, detention or imprisonment;
> **b.** Malicious prosecution;
> **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
> **f.** The use of another's advertising idea in your "advertisement"; or
> **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Ex. B, the Policy, at BOP, p. 36.) No conduct alleged in the Underlying Complaint falls under this definition.

Any argument by Camp's that subsections (d) and (e) apply are unfounded.

For either subsection (d) or (e) to apply, there must have been a "publication, in any manner" by Camp's, which there has not. "Publication" while not defined by the policy, is not ambiguous and has been defined by the Eleventh Circuit to mean "communication (as of news or information) to the public: public announcement" or "the act or process of issuing copies . . . for general distribution to the public." *Creative Hosp. Ventures, Inc. v. United States Liab. Ins. Co.*, 444 F. App'x 370, 375-76 (11th Cir. 2011) (quoting *Penzer v. Transp. Ins. Co*., 29 So. 3d 1000, 1005-1006 (Fla. 2010)). The phrase "in any manner" "merely expands the categories of publication (such as e-mail, handwritten letters, and, perhaps, "blast-faxes") covered by the Policy." *Id*. at 376. Assuming *arguendo*, that there has been a publication, there still has been no publication <u>by Camp's</u>.

The Underlying Complaint alleges that due to Camp's failure to safeguard Plaintiff's information, "third parties were able to access, obtain and use" Plaintiffs' "personal and financial information." (Ex. A, the Underlying Complaint, ¶34.) This is an allegation that a third-party, rather than Camp's, committed the publication which is insufficient for a personal and advertising injury. A plain reading of the offenses that encompass the definition of "personal and advertising injury" reveals that the offenses require conduct by the insured. This follows, as State Farm and Camp's bargained for a policy of insurance which covers Camp's against its own conduct. State Farm did not bargain to cover the actions of an

unknown, intervening third-party. To hold differently, would "expand[] coverage beyond what [State Farm was] entering into or knowingly entering into." *Zurich Am. Ins. Co., et al. v. Sony Corp. of Am., et al.*, No. 651982/2011, 2014 N.Y. Misc. LEXIS 5141 (N.Y. Sup. Ct. February 21, 2014) (unpublished).

Thus, the Underlying Complaint's allegations of publication by a third-party are not sufficient to establish a personal and advertising injury. *Zurich*, 2014 N.Y. Misc. LEXIS 5141 (granting summary judgment for the insurer under identical policy language, holding there was no duty to defend where "there was no act or conduct perpetrated by [the insured], but it was done by 3rd party hackers illegally breaking into that security system. And that alone does not fall under [the "personal and advertising injury"] policy provision.); *Butts v. Royal Vendors, Inc.*, 202 W. Va. 448, 454, 504 S.E.2d 911 (W. Va. 1998) (holding there was no personal injury coverage "[s]ince the policy was not written to cover publication by a third-party").

Because there has been no occurrence or personal and advertising injury, the BOP has not been triggered and the Court's inquiry into coverage should end here.

### 3. Even if the BOP Insuring Agreement Was Triggered, Several Exclusions Apply to Preclude Coverage.

#### a. The Electronic Data Exception Applies to Preclude Coverage.

The BOP specifically excludes "damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data." (*See* Ex. B, the Policy, at BOP, p. 28). The BOP defines electronic data to mean:

> Information….stored….on, created or used on, or transmitted to or from computer software (including systems and applications software), on….cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment….

(Ex. B, the Policy, at BOP, p. 28).

The allegations of the Underlying Complaint provide that the underlying plaintiffs' personal and financial information was wrongfully accessed as a result of Camp's failure to safeguard it. (Ex. A, Underlying Complaint at ¶¶8, 36-42). The information was wrongly accessed when the underlying plaintiffs' electronic magnetic card stripe information was compromised through a data breach. Therefore, all of the damages claimed in the Underlying Complaint arise from measures taken because of "the loss of" the electronic data contained on the magnetic stripe of the underlying plaintiffs' credit cards. Accordingly, based on the plain reading of the exclusion, alongside the allegations in the Complaint, the

Court should hold that the Electronic Data Exclusion applies to preclude coverage under the BOP.

### b. The Willful and Malicious or Criminal Acts Exclusion Applies to Bar Coverage.

The BOP also excludes coverage for "bodily injury" or "property damage" which is "the result of willful and malicious or criminal acts of the insured." (Ex. B, the Policy, at BOP, p. 24.) "Willful" conduct is that in which the actor "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *McCauley v. Estes*, 726 So. 2d 719, 722 (Ala. Civ. App. 1998) (quoting PROSSER AND KEETON ON TORTS § 34 (5th ed. 1984)).

A defendant might not act with intent to cause harm, yet may still act with total indifference to the consequences of his actions. *Id.* Failure to fully appreciate the consequences of one's actions, "do not make the actions any less willful or malicious." *Id.* (citations omitted); *See also State Farm Fire & Cas. Co. v. Burkhardt*, 96 F. Supp. 2d 1343 (M.D. Ala. 2000) (holding that "willful and malicious acts" exclusion applied where the underlying factual allegations were of willful and malicious conduct, even though the term "negligence" appeared in the complaint). Whether a defendant acted willfully or maliciously is an objective standard. *Thorn v. Am. States Ins. Co.*, 266 F. Supp. 1346, 1350 (M.D. Ala. 2002)

(holding that under Alabama law, an objective standard must be used in determining whether the allegations of a complaint fall under the insurer's exclusion for bodily injury or property damage which is the result of willful or malicious acts, which means that the acts of the insured, rather than his intent or lack of intent to cause injury, determines whether the exclusion applies).

The Underlying Complaint alleges that Camp's conduct was "willful" and that Camp's "knew or should have known" that its conduct would result in harm to the underlying plaintiffs. (Ex. A, Underlying Complaint ¶¶ 8, 27-29, 47, 60, 65, 69). Accordingly, the willful and malicious acts exclusion applies. Further, count two of the Underlying Complaint alleges that Camp's violated the Gramm-Leach-Bliley Act. (Ex. A, Underlying Complaint at ¶58). Gramm-Leach-Bliley Act violations are criminal in nature and can result in fines and imprisonment of the violator. Thus, under the allegations of the Underlying Complaint, the Court should hold that the criminal acts exclusion applies to preclude coverage as well.

## V.  CONCLUSION

State Farm has no duty to defend or indemnify Camp's for the underlying lawsuit. The IMCPF is a first-party insuring agreement that does not contain a duty to defend provision. Further, the allegations of the Underlying Complaint do not trigger the insuring agreement or the extensions of coverage contained in the IMCPF. Further, the insuring agreement of the BOP is not triggered, but even if it

is the Electronic Data Exclusion, and the Willful and Malicious and Criminal Acts Exclusion, preclude coverage under the BOP.

**WHEREFORE, PREMISES CONSIDERED**, State Farm respectfully moves this Court to grant its Motion for Summary Judgment and to declare it has no duty to defend or indemnify Camp's in the underlying suit.

**Respectfully submitted this the 11th day of May, 2016.**

**/s/ A. David Fawal**
**A. David Fawal [ASB-4593-W82A]**
david.fawal@butlersnow.com
**Margaret H. Loveman [ASB-6775-E60H]**
Margaret.loveman@butlersnow.com

OF COUNSEL:
BUTLER SNOW LLP
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 297-2200
Facsimile:   (205) 297-2100

*Attorneys for State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served on all parties to this action by e-file using the Court's CM/ECF system and/or by depositing a copy of the same in the U. S. Mail, first-class postage prepaid and properly addressed as follows:

Jeff S. Daniel
Law Office of Jeff S. Daniel, P.C.
P.O. Box 131323
Birmingham, Alabama  35213
Telephone:  (205) 531-1287
Facsimile:  (205) 327-5773
Email:          jsd10@bellsouth.net

*Attorney for Plaintiff*

      **Done this the 11th day of May, 2016.**


            **/s/ A. David Fawal**
            **OF COUNSEL**