ELECTRONICALLY FILED
8/17/2015 4:31 PM
31-CV-2015-900607.00
CIRCUIT COURT OF
ETOWAH COUNTY, ALABAMA
CASSANDRA JOHNSON, CLERK

## IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA

### CASE NO: _____

**ALABAMA TEACHERS CREDIT
UNION, FAMILY SAVINGS CREDIT
UNION and WINSOUTH CREDIT
UNION,**

       **Plaintiffs,**

**VS.**

**CAMP'S GROCERY, INC., d/b/a
PIGGLY WIGGLY; PIGGLY
WIGGLY, LLC;**

**No. 1,** whether singular or plural, that entity or those entities who or which owned, maintained or had any interest in the company(ies) involved in the circumstances made the basis of this lawsuit;

**No. 2,** whether singular or plural, that entity or those entities who or which had the duty to supervise, control, hire and train the employees of any of the named defendants or fictitious party defendants listed or named herein;

**No. 3,** whether singular or plural, that entity, other than those described above, the negligent, wanton, and/or reckless conduct or other wrongful conduct of which contributed to cause the injuries and damages to the Plaintiffs;

**No. 4,** whether singular or plural, that entity which, concerning the circumstances made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants;

**No. 5,** whether singular or plural, that entity or those entities who or which is the predecessor corporation of any named or fictitiously described defendant in this lawsuit;

**No. 6,** whether singular or plural, that entity or those entities who or which is the parent corporation, sister corporation or any otherwise related entity which is liable for any claims made by the Plaintiffs in this lawsuit;

**No. 7,** whether singular or plural, that entity which is the successor-in-interest of the named or above-described fictitious party defendants; and

**No. 8,** whether singular or plural, that entity, other than those described above, the negligence, recklessness, wantonness, breach of contract or other wrongful conduct of which contributed to cause Plaintiffs' injuries.

      Plaintiffs aver that the identity of the Fictitious Party Defendants is otherwise unknown to Plaintiffs at this time, or, if their names are known to Plaintiffs at this time, their identity as proper party defendants is not known to Plaintiffs at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

      **Defendants.**

EXHIBIT A

## COMPLAINT

### PARTIES

1.   Plaintiffs Alabama Teachers Credit Union, Family Savings Credit Union, and Winsouth Credit Union (collectively "Plaintiffs") are credit unions organized and existing under the laws of the State of Alabama with their principal place of business in Etowah County, Alabama.

2.   Defendant Camp's Grocery, Inc., ("Camp's Grocery") is a corporation existing under Alabama law and doing business as "Piggly Wiggly" in Etowah County, Alabama.

3.   Defendant Piggly Wiggly, LLC, ("Piggly Wiggly') is a privately held company doing business in the state of Alabama with its principal place of business in Keene, New Hampshire.

4.   Defendant Camp's Grocery, Defendant Piggly Wiggly, and Fictitious Party Defendants described in the caption hereof are hereinafter individually and collectively referred to as ("Defendants").

### NATURE OF THE ACTION

5.   In both known and unknown data security breaches, thousands of credit cards and debit cards were compromised due to Defendants' acts and omissions. Plaintiffs bring this action seeking redress and damages caused by Defendants' misrepresentations, unfair and deceptive acts and practices, negligence, breach of contract, and improper retention of certain customer confidential information in connection with a data security breach.  Defendants' failure to adequately safeguard customer confidential information and related data and failure to maintain adequate encryption, intrusion detection and prevention procedures in its computer systems caused the losses hereinafter set forth.

6.   At all times pertinent to this Complaint, Defendant Camp's Grocery was acting within

the line and scope of its Franchise Agreement with Defendant Piggly Wiggly. Defendant Piggly Wiggly is vicariously liable to Plaintiffs due to the negligence or wantonness of its agents and/or employees.

7.    During the relevant time period, Defendants combined and concurred to negligently and/or wantonly provide computer systems and training to Defendants stores and employees, and negligently and/or wantonly breached acceptable standards of practice in providing such computer systems in that said Defendants failed to maintain adequate encryption, intrusion detection and prevention procedures in its computer systems, which caused the losses hereinafter set forth.

8.    As a result of Defendants' wrongful actions, customer information was accessed from Defendant Camp's Grocery's computer systems. As a result, the Plaintiffs have incurred significant losses associated with credit and debit card reissuance, customer reimbursement for fraud losses, lost interest and transaction fees (including lost interchange fees), lost customers, diminished goodwill, administrative expenses associated with monitoring and preventing fraud and administrative expenses in dealing with investigation, customer confusion, fraud claims and card reissuance.

9.    Plaintiffs seek to recover damages caused by Defendants for negligent misrepresentations, unfair and/or deceptive acts or practices in accordance with applicable state and federal laws.

**FACTS**

10.    Defendant Camp's Grocery operates a grocery store, doing business as "Piggly Wiggly", in Hokes Bluff, Alabama.

11.     Defendant Piggly Wiggly entered a Franchise Agreement with Defendant Camp's Grocery and provided support and services throughout the relevant time period of this Complaint.

12.     In or around October of 2014, Plaintiffs began to experience fraud losses on customer ATM/debit card, check card and credit card accounts (hereinafter known as "Card Accounts", such access cards hereinafter known as "Cards").

13.     Said losses were evaluated between Plaintiffs and the point of common origin was determined to be Defendant Camp's Grocery.

14.     Plaintiffs contacted local law enforcement authorities regarding said losses.

15.     Upon information and belief, local law enforcement, working with the United States Secret Service, investigated said losses and determined the origin to be Defendant Camp's Grocery.

16.     Defendants, after obtaining knowledge of the initial data security breach and the cause therefor, allowed a second unlawful intrusion onto its computer system.

17.     U.S. retailers, including Defendant Camp's Grocery, are required to follow stringent card-industry rules.  The rules that cover transactions on card branded with logos from VISA, MasterCard, American Express Co. and Discovery Financial Services, and others, require merchants, such as Defendants, to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information.

18.     Plaintiffs have suffered unauthorized transactions and have incurred expense and the loss of time related to changing cards and accounts because of the Defendants' breach.

19.     Plaintiffs' customers made purchases at Defendant Camp's Grocery facility during the relevant time period and did so because they were led to believe that the Defendants would not allow personal and private information to be disseminated to other unknown persons or entities.

20.     Cards are issued by financial institutions ("Issuing Banks") to consumers. Transactions are handled, in part, by processors for Issuing Banks (such processors called "Acquiring Banks").  Merchants ("Merchants") receive Card information in exchange for the purchase of goods or services.

21.     Plaintiffs serve as Issuing Banks, which issue Cards to their customers.

22.     Defendant Camp's Grocery, a seller of retail goods, is a Merchant and accepts Card transactions from customers.

23.      Visa issues regulations that are contained in "Visa International Operating Regulations" (the "Operating Regulations").

24.     The Operating Regulations governed the conduct of Defendants at all times relevant to this action.

25.     Defendants are required to comply with the Operating Regulations, including those portions of the Operating Regulations that mandate safeguarding of cardholder information and that prohibit retention or storage of unprotected cardholder information, including securing account data in accordance with the "Payment Card Industry Data Security Standard" ("PCI Data Security Standard").

26.     The PCI Standards require the following:

**Build and Maintain a Secure Network**

- Install and maintain a firewall configuration to protect data

- Do not use vendor-supplied defaults for system passwords and other security parameters

**Protect Cardholder Data**

- Protect stored data

- Encrypt transmission of cardholder data and sensitive information across public networks

**Maintain a Vulnerability Management Program**

- Use and regularly update anti-virus software

- Develop and maintain secure systems and applications

**Implement Strong Access Control Measures**

- Restrict access to data by business need-to-know

- Assign a unique ID to each person with computer access

- Restrict physical access to cardholder data

**Regularly Monitor and Test Networks**

- Track and monitor all access to network resources and cardholder data

- Regularly test security systems and processes

**Maintain an Information Security Policy**

- Maintain a policy that addresses information security

27.     At all times relevant hereto, Defendants knew or should have known that the Operating Regulations forbid retaining or storing Card magnetic stripe information subsequent to the authorization of a transaction.

28.     At all times relevant hereto, Defendants knew or should have known that the Operating Regulations forbid disclosing any cardholder account numbers, personal information,

magnetic stripe information, or transaction information to third parties other than the Merchant's agent, the Acquiring Bank, or the Acquiring Bank's agents.

29.    At all times relevant hereto, Defendants knew or should have known that the Operating Regulations require them to secure and keep confidential cardholder information and magnetic stripe information from unauthorized disclosure, as set out in the Operating Regulations.

30.    Defendants' contract for participation in credit and debit card clearing systems and their involvement in this complex web of interrelated financial institutions required the Defendants to:  (a) comply with the Operating Regulations; (b) properly secure card magnetic stripe information; (c) not retain or store such information subsequent to authorization of a transaction; and (d) not disclose such information to unauthorized third parties.

31.    Defendants, at all times relevant to this action, represented and had a duty to Plaintiffs to: (a) comply with the Operating Regulations; (b) properly secure card magnetic stripe information; (c) not retain or store such information subsequent to authorization of a transaction; and (d) not disclose such information to unauthorized third parties.

32.    Defendants negligently allowed Card magnetic stripe information to be compromised.

33.    Defendants negligently utilized a computer system that retained, stored and/or disclosed (or allowed to be disclosed) Card magnetic stripe information.

34.    Third parties were able to access, obtain and use the Card magnetic stripe information obtained to fraudulently make transactions and to sell, transfer, use or attempt to use such information for fraudulent purposes.

35.     A substantial number of Plaintiffs' customers used Cards at Defendant Camp's Grocery store and those transactions enabled Defendants to retain and store information from those cardholders through the magnetic stripe on the Cards.

36.     As a result of the events set forth in the above paragraphs, Plaintiffs had to protect their customers and avoid fraud losses, cancel Cards they had issued, and reissue Cards with new account numbers and magnetic stripe information to customers.

37.     The cancellation and reissuance of cards resulted in damages and losses to Plaintiffs.

38.     As a result of the events set forth in above paragraphs, Plaintiffs suffered losses related to reimbursement of fraudulent charges or reversal of customer charges.

39.     As a result of the events set forth in above paragraphs, Plaintiffs suffered losses related to lost interest and transaction fees (including lost interchange fees).

40.     As a result of the events set forth in above paragraphs, Plaintiffs suffered losses related to administrative expenses and overhead charges associated with monitoring and preventing fraud.

41.     As a result of the events set forth in above paragraphs, Plaintiffs suffered losses related to administrative expenses associated with addressing customer confusion and fraud claims.

42.     As a result of the events set forth in above paragraphs, Plaintiffs incurred additional costs, expenses, and other consequential damages, including, but not limited to, potential damages to Plaintiffs' reputations and lost customers.

43.     As a result of the events set forth in above paragraphs, Plaintiffs will suffer additional monetary harm for the costs and expenses described above as additional fraud alerts and fraud charges are discovered and occur.

## CAUSES OF ACTION

## COUNT ONE

## NEGLIGENT MISREPRESENTATION

44.     Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

45.     In participating in the Card Systems, Defendants falsely represented that they would comply with the Card Operating Regulations and would safeguard customer data in order to induce credit unions to act as Issuing Banks and provide their customers with Cards for use at Defendants' stores.  Defendants made these representations in the course of business operations and had a pecuniary interest in the representations in that they would allow Defendants to process Card payments from its customers.

46.     Defendants' compliance with the Card Operating Regulations and safe guarding of customer data were material facts upon which the Plaintiffs relied.   Further, Defendants' representations that they would comply with the Card Operating Regulations and safeguard customer data were false at the time Defendants made these representations to the Issuing Banks.

47.     Defendants, which knew or should have known that it was not in compliance with the Card Operating Regulations and was not safeguarding customer data, represented that they were so doing, which included a representation that they would not retain, store or disclose the magnetic stripe information and would maintain the confidentiality of the information.

48.      Plaintiffs agreed to act as the Issuing Banks for Card transactions expecting that businesses such as Defendants' would comply with the Card Operating Regulations and would

safeguard customer data.  Plaintiffs relied upon and acted in reliance on such representations by Defendants.

49.    Plaintiffs would have attempted to take additional steps to protect themselves but for the misrepresentations of Defendants as set forth above.

50.  Defendants failed to exercise reasonable care in obtaining and in communicating the information that Plaintiffs relied upon.

51.    Plaintiffs justifiably relied upon the false representations made by Defendants regarding the security and confidentiality of the Card information.

52.    Plaintiffs have suffered damages as set forth above as a result Defendants' misrepresentations.

## COUNT TWO

### VIOLATION OF THE GRAMM-LEACH-BLILEY ACT AS UNLAWFUL DECEPT ACTS AND PRACTICES

53.    Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

54.  Defendants have  a duty pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. and 16 C.F.R. § 313 et seq., not to misuse or inappropriately disclose information received as a third party for the purpose of processing a transaction requested by a customer of its stores.

55.  Pursuant to 16 C.F.R. § 313.11(iii), third party recipients of financial data such as Defendants, cannot "use" or "disclose" the information other than in "the ordinary course of business to carry out the activity covered by the exception under which [it] received the information."

56.   Defendants were obligated under 16 C.F.R. § 313.11 to only use and disclose customer financial information for the purposes for which it was disclosed, more specifically, to process the transaction.

57.   Plaintiffs, in the course of business, placed the nonpublic personal information of their cardholder-customers onto the magnetic stripe of their Cards with the expectation that retail merchants, such as Defendants, would access that information only for the purpose of processing transactions that are initiated by that customer.

58.   Defendants violated the Gramm-Leach-Bliley Act in that they improperly used and disclosed the information in violation of the Privacy Regulations by (i) maintaining the data well beyond the permitted time-frame; and (ii) allowing the data to be accessed by others for purposes unrelated to the processing of the Card transactions.

59.   Plaintiffs have suffered damages as set forth above as a result of these unfair and deceptive trade practices.

60.   The unfair and deceptive acts and practices described above were knowingly unfair and/or willful.

## COUNT THREE

## NEGLIGENCE

61.   Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

62.   Defendants owed a duty to Plaintiffs to use and exercise reasonable and due care in obtaining and retaining the personal and financial information of Plaintiffs and their customers.

63.   Defendants owed a duty to Plaintiffs to provide adequate security to protect the personal and financial information of Plaintiffs and their customers.

64. Defendants breached their duties by allowing an unlawful intrusion into its computer system, failing to protect against such an intrusion; and allowing personal and financial information of Plaintiffs and their customers to be accessed by third parties.

65. Defendants knew, or with the reasonable exercise of care should have known, of the risks inherent in retaining such information, and the importance of providing adequate security.

66. As a direct and proximate result of Defendants' carelessness and negligent conduct, Plaintiffs suffered substantial losses as set forth above.

## COUNT FOUR

## WANTONNESS

67. Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

68. Defendants wantonly injured Plaintiffs by allowing an unlawful intrusion into its computer system, failing to protect against such an intrusion; and allowing personal and financial information of Plaintiffs and it customers to be accessed by third parties.

69. Defendants wantonly injured Plaintiffs by allowing, after it was already advised on an initial data security breach, a second unlawful intrusion into its computer system, failing to protect against such an intrusion; and allowing personal and financial information of Plaintiffs and their customers to be accessed by third parties.

70. As a direct and proximate result of Defendants' reckless and wanton conduct, Plaintiffs suffered substantial losses as set forth above.

## COUNT FIVE

## NEGLIGENCE PER SE

71. Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

72.   At all relevant times, Defendants were required to comply with, inter alia, the applicable industry standards requiring Defendants to implement internal systems controls to prevent, detect, and responds to system intrusions, and to securely handle and transfer sensitive financial data of its Customers.  These standards include, without limitation, the PCI Standards and the Card Operating Regulations.

73.   Defendants were also required to comply with federal regulations governing the protection of consumer information, including, without limitation, the 16 C.F.R. Part 681, more commonly referred to as the "Red Flag Rules."  The Red Flag Rules require Defendants to adopt a plan to prevent identity theft and ensure the safety of its customer's financial and personal data. The Red Flag Rules require "creditors" and "financial institutions" with "covered accounts" to implement programs to identify, detect, and respond to the warning signs or "red flags" that could indicate potential identity theft.  At all relevant times, Defendants were a "creditor" and had "covered accounts" as used in the Red Flag Rules.  Under the relevant Red Flag Rules, Defendants were required to "oversee, develop and administer" a written Identity Theft Protection Program that identifies and addresses "red flags" indicating vulnerabilities and potential security threats to, among other information, sensitive financial information of Defendants' customers.  Further, the Red Flag Rules require that the Defendants' written Identity Theft Protection Program include provisions for detecting red flags, including procedures for monitoring credit transactions, as well as responding to and mitigating the instances of potential identity theft.

74.   The regulations and industry security standards set forth above establish the minimal duty of care owed by Defendants to the Plaintiffs.

75.   Defendants failed to comply with the stated regulations and industry security standards as more fully described above.

76.   Upon information and belief, had Defendants been in compliance with the regulations and industry security standards during the relevant time periods, the data security breach would not have occurred.

77   Defendants' violations of the PCI Standards, the Card Operating Regulations, and the Red Flag Rules constitute negligence per se and directly and/or proximately caused Plaintiffs to suffer substantial damages.

78.   Plaintiffs were members of the class of persons intended to be protected by the PCI Standards, the Card Operating Regulations, and the Red Flag Rules.

79.   As a direct and proximate result of Defendants' carelessness and negligent conduct, Plaintiffs suffered substantial losses as set forth above.

## COUNT SIX

## BREACH OF CONTRACT

80.   Plaintiffs reaffirm and reallege each and every above-paragraph and add the following:

81.   Defendants were required to comply with the Card Operating Regulations.

82.   Defendants breached their obligations to the Plaintiffs as third party beneficiaries of Defendants' contract with card clearing entities.

83.   Plaintiffs were intended third-party beneficiaries to the contracts entered into by Defendants to comply with the Card Operating Regulations and such contracts are valid and enforceable.

84.   As a direct and proximate result of Defendants' breach of contract, Plaintiffs suffered losses as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek damages against the Defendants, and Fictitious Party Defendants described in the caption above, for the conduct detailed herein. Plaintiffs demand judgment against Defendants as follows:

1.     Money damages (compensatory and punitive);

2.     Reasonable attorney's fees;

3.     Costs;

4.     Prejudgment interest; and

5.     Such other relief as the Court deems equitable and just.

## JURY DEMAND

**PLAINTIFFS HEREBY DEMAND TRIAL IN THIS CAUSE BY STRUCK JURY.**

Respectfully Submitted

/s Jonathan Kudulis
Jonathan L. Kudulis (KUD001)
Attorney for Plaintiff
Trimmier, Kudulis & Reisinger, LLC
17 North 20th St, Suite 350
Birmingham, Alabama 35203
205-251-3151
205-322-6444 (fax)

**Serve Defendants as follows:**

**Camp's Grocery, Inc. (*via certified mail*)**
**d/b/a Piggly Wiggly**
**c/o Don Camp, Registered Agent**
**933 Champion Road**
**Oneonta, Alabama 35121**

**Piggly Wiggly, LLC (*via certified mail*)**
**7 Corporate Drive**
**Keene, NH 03431**